## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JESSICA DASCH                :

                 :

          **Plaintiff,**      :     **3:25-cv-00766**

                 :     **(JUDGE MARIANI)**

    **v.**                    :

                 :

**USAA CASUALTY INSURANCE**    :

**COMPANY**               :

                 :

        **Defendant.**      :

FILED
SCRANTON

AUG 2 1 2025

PER___DJ___
DEPUTY CLERK

### <u>MEMORANDUM OPINION</u>

Presently before the Court is Defendant USAA Casualty Insurance Company ("Defendant" or "USAA") partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 8). For the reasons that follow, Defendant's motion will be denied.

### I.     <u>INTRODUCTION AND PROCEDURAL HISTORY</u>

On May 1, 2025, Plaintiff Jessica Dasch filed a Complaint against Defendant USAA. (Doc. 1). In the Complaint, Plaintiff brings two claims under Pennsylvania law: breach of contract (Count I), and statutory bad faith pursuant to 42 Pa. C.S.A. § 8371 (Count II). (*Id.*). On July 17, 2025, Defendant filed a motion to dismiss Count II of Plaintiff's Complaint. (Doc. 8). The matter has been fully briefed and is ripe for disposition.[1]

---

[1]     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of the Commonwealth of Pennsylvania and Defendant is a citizen of the State of Texas and the amount in controversy exceeds $75,000. (Doc. 1, ¶¶ 1-2).

## II.    <u>FACTUAL ALLEGATIONS</u>

Plaintiff's Complaint alleges the following facts:

On December 23, 2020, Jessica Dasch was stopped at a red light on West Columbia Street, Schuylkill Haven, Pennsylvania, when a vehicle driven by Jacob McGovern crashed into the rear of Jessica Dasch's vehicle.  (Doc. 1, ¶ 5).  As a result of the automobile crash, Jessica Dasch sustained cervical, thoracic and lumbar injuries, together with posttraumatic stress disorder and paresthesia of the hand causing her to sustain significant medical treatment, including multiple injections and surgical consideration.  (*Id.*, ¶ 6).  After the crash, Jessica Dasch pursued a third-party claim against Jacob McGovern, which resulted in a tender of $95,000 of the $100,000 policy limits from Mr. McGovern.  (*Id.*, ¶ 7).  Before Jessica Dasch accepted the policy limits with Mr. McGovern's insurance company, she obtained consent to settle from USAA.  (*Id.*, ¶ 8).

Thereafter, Plaintiff pursued an underinsured motorist claim (hereinafter UIM) against USAA and provided sufficient information for USAA to evaluate and tender their policy limits.  (*Id.*, ¶ 9).  Specifically, on December 31, 2024, Jessica Dasch provided the following information:  (a) police report; (b) photos of the damage to the vehicle; (c) emergency department records; (d) medical records from orthopedic surgeon; (e) medical records for physical therapy; (f) medical records from neurologist; (g) medical records from pain management doctor; (h) deposition testimony in the third-party case of Jessica Dasch;

and (i) automobile declaration sheet. (*Id.*).  Defendant, in response to this information, offered $2,500, which is completely unreasonable and in bad faith. (*Id.*, ¶ 10).

On January 27, 2025, Jessica Dasch provided a medical report from her pain management doctor which specifically stated that she would need ongoing pain medication of Meloxicam and Flexural for the foreseeable future together with ongoing injections in both the lumbar and cervical spine four times per year and a surgical consult to determine whether she would need surgery. (*Id.*, ¶ 11).  On March 24, 2025, Jessica Dasch provided an expert report projecting future medical treatment in an amount of $2,375,112. (*Id.*, ¶ 12). Defendant USAA has failed to respond to this new information or increase its offer, despite repeated requests by Plaintiff's counsel. (*Id.*, ¶ 13).  At the time of the subject crash, plaintiff had procured insurance through USAA containing underinsured motorist benefits for $45,000. (*Id.*, ¶ 14).   The subject policy was in full force and effect at the time of the subject accident set forth herein, and plaintiff has paid all premiums due and owning. (*Id.*). Said policy is believed to be in the possession of the Defendant since it was prepared and issued by the Defendant, and as such, it is not attached. (*Id.*).

In Count I Plaintiff alleges a breach of contract. (*Id.*, at 4-5).  As alleged by Plaintiff, Defendant issued an automobile policy to Jessica Dasch, which provided underinsured motorist benefits of $45,000 for the accident, which the subject of this litigation. (*Id.*, ¶ 16). The subject policy was in full force and effect on the date of the accident. (*Id.*, ¶ 17). Pursuant to the terms of the foregoing automobile insurance policy, Defendant was

3

obligated to provided underinsured motorist benefits to Jessica Dasch in accordance with the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. § 1701 *et seq.* (*Id.*). By virtue of the foregoing automobile insurance provisions and the governing law, the Defendant owed a duty to plaintiff to pay all damages she is legally entitled to recover as an operator of an underinsured motor vehicle as a result of the motor vehicle crash on December 23, 2020. (*Id.*, ¶ 18). Defendant, in failing to continue to evaluate and/or make a reasonable, good faith offer of underinsured motorist benefits, has breached the terms and conditions of the foregoing automobile insurance policy. (*Id.*, ¶ 19). The failure of the Defendant to abide by its underinsured motorist contract caused Plaintiff to incur expenses, suffer unnecessary delay and hardship, and otherwise sustained damages which would have been avoided if the Defendant had promptly and reasonably honored and complied with its statutory and contractual obligations. (*Id.*, ¶ 20). As a direct and proximate result of the Defendant's before mentioned conduct, Plaintiff has not received payment of underinsured motorist benefits under the subject policy issued by the Defendant. (*Id.*, ¶ 21). As a result of the Defendant's breach of its duty under the foregoing automobile insurance policy under Pennsylvania law, Plaintiff has suffered actual and consequential damages. (*Id.*, ¶ 22).

In Count II Plaintiff alleges statutory bad faith pursuant to 42 Pa. C.S.A. § 8371. (*Id.*, at 5-7). According to Plaintiff, Defendant's conduct, actions and omissions in repeatedly failing to pay underinsured motorist benefits to Plaintiff and/or failing to continue to evaluate,

respond, and/or make a fair and reasonable offer to settle Plaintiff's underinsured motorist claim constitutes bad faith on the part of the Defendant towards its insured. (*Id.*, ¶ 24). Plaintiff alleges the following constitutes Defendant's bad faith:

- Failed to promptly and reasonably respond to Plaintiff's counsel information provided and demand for payment of plaintiff's underinsured motorist benefits after the Defendant had been provided with medical documentation on multiple occasions, which clearly established an immediate payment of such underinsured motorist benefits which was justified and warranted. (*Id.*, ¶ 24(a));

- Unreasonable and vexatious delay in the payment of underinsured motorist benefits to Plaintiff when it was clear that immediate payment of underinsured motorist benefits was justified and warranted. (*Id.*, ¶ 24(b));

- Failing to make a reasonable settlement offer or payment to Plaintiff, thereby compelling Plaintiff to institute a lawsuit and incur additional costs to recover those benefits rightly due. (*Id.*, ¶ 24(c));

- Failing and/or refusing to pay the fair amount of Plaintiff's underinsured motorist benefits and damages without a reasonable foundation to do so. (*Id.*, ¶ 24(d));

- Failing to acknowledge or act promptly upon written communications from Plaintiff regarding the underinsured motorist claim. (*Id.*, ¶ 24(e));

- Failing to adopt and implement reasonable standards for the prompt investigation and payment of UIM claims arising out of Plaintiff's automobile insurance contract. (*Id.*, ¶ 24(f));

- Failing to pay Plaintiff's underinsured motorist claims within a reasonable time after supporting medical and wage loss documentation has been provided to the Defendant. (*Id.*, ¶ 24(g));

- Failing to attempt in in good faith and to effectuate a fair, prompt, and equitable settlement of Plaintiff's underinsured motorist claim. (*Id.*, ¶ 24(h));

- Failing to exercise the utmost good faith and discharge its statutory and contractual duties to Plaintiff. (*Id.*, ¶ 24(i));

- Making an offer of $2,500 which was clearly unreasonable considering the injuries, out-of-pocket medical expenses and wage loss. (*Id.*, ¶ 24(j).

As a result of the Defendant's bad faith conduct and actions, Plaintiff is entitled to recover in addition to the full value of the underinsured motorist claim interest, punitive damages, and counsel fees pursuant to Pennsylvania's Bad Faith Statute. (*Id.*, ¶ 25).

### III.    <u>STANDARD OF REVIEW</u>

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at

678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting *Iqbal,* 556 U.S. 679).

## IV.    ANALYSIS

Defendant USAA seeks dismissal of Plaintiff's statutory bad faith claim alleged in Count II of the Complaint. (Doc. 8). More specifically, USAA asserts that Plaintiff's statutory bad faith claim must be dismissed with prejudice "because it alleges nothing more than a dispute or disagreement about the value of Plaintiff's UIM claim." (Doc. 9 at 10). Plaintiff opposes Defendant's motion. (Doc. 10).

The Pennsylvania legislature has created a statutory remedy for an insurer's bad faith conduct, which reads as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> > (2) Award punitive damages against the insurer.
> > (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371.

"The standard for bad faith claims under § 8371 is set forth in *Terletsky v. Prudential Property & Cas. Ins. Co.,* 437 Pa. Super. 108, 649 A.2d 680, 688 (1994), *appeal denied,*

8

540 Pa. 641, 659 A.2d 560 (1995)." *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997). *Terletsky* defined the term "bad faith" as follows:

> In the insurance context, the term bad faith has acquired a particular meaning:
>
> *Insurance*. "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky*, 649 A.2d at 688 (quoting Black's Law Dictionary 139 (6th ed. 1990)). "[T]o recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Id.*

Although Plaintiff's Complaint does contain a number of conclusory allegations, statements of the law, and legal conclusions that are not entitled to the presumption of truth under the governing Rule 12(b)(6) standard, Plaintiff's Complaint nonetheless properly sets forth factual allegations sufficient to state a claim for relief under Pennsylvania's bad faith statute. Although sparse with respect to the bad faith claim, Plaintiff's factual allegations that remain after the Court disregards Plaintiff's conclusory allegations and legal conclusions are enough to barely "nudge[] [the] claim[] across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570.

9

First, the Complaint alleges that Defendant has failed to respond to information submitted by the Plaintiff, including an expert report dated March 24, 2025. (Doc. 1, ¶¶ 12-13, 24(e)). The Complaint also alleges that Defendant failed to properly investigate and respond to the information provided by Plaintiff and Plaintiff's counsel and only offered $2,500 under Plaintiff's underinsured motorist policy. (*Id.*, ¶¶ 9-10, 24(a)). "A claim for bad faith may be premised on an insurer's bad faith in investigating a claim, such as by failing to conduct a good faith investigation into the facts or failing to communicate with the claimant." *Shaffer v. State Farm Mut. Auto. Ins. Co.*, 643 F.App'x 201, 204 (3d Cir. 2016). Although delay "on its own [does not] necessarily constitute bad faith", the delay between a demand for benefits and an insurer's determination of whether to pay a claim is a relevant factor in determining whether an insurer has acted in bad faith. *Id.* (citing *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 589 (E.D. Pa. 1999)); *see also Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 752 (3d Cir. 1994) (in determining whether the insurer has acted in bad faith, courts may consider the delay by insurer in responding to communications from insured, its response time in engaging an investigator and in conducting an investigation, and its handling of settlement negotiations). Thus, Plaintiff's allegations that Defendant failed to properly investigate and refused to respond to Plaintiff's communications supports Plaintiff's claim of bad faith.

Courts have held that bad faith behavior encompasses an insurer's failure to "properly investigate claims prior to refusing to pay the proceeds of the policy to its insured."

*Gold v. State Farm Fire and Cas. Co.*, 880 F.Supp.2d 587, 597 (E.D. Pa. 2012) (quoting

*Bombar v. W. Am. Ins. Co.*, 932 A.2d 78, 92 (Pa. Super. 2007)). As the Third Circuit has

explained, "'[b]ad faith is a frivolous or unfounded refusal to pay, lack of investigation into

the facts, or a failure to communicate with the insured.'" *Gallatin Fuels, Inc. v. Westchester*

*Fire Ins. Co.*, 244 F.App'x 424, 433 (3d Cir. 2007) (quoting *Frog, Switch & Mfg. Co., Inc. v.*

*Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir. 1999)). "Refusing to pay without

conducting a reasonable investigation of all available information is sufficient" to alleged bad

faith under Pennsylvania's bad faith statute. *Lincoln Benefit Life Co. v. Bowman*, 221 F.

Supp. 3d. 617, 632 (E.D. Pa. 2016) (citing *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500,

515-15, 522-23 (3d Cir. 2012)).

Although bad faith "is not present merely because an insurer makes a low but

reasonable estimate of an insured's damages," the disparity between the defendant

insurer's payment and the plaintiff's estimates is a relevant consideration in bad faith claims.

*Smith v. State Farm*, 506 F.App'x 133, 136 (3d Cir. 2012) (quoting *Johnson v. Progressive*

*Ins. Co.*, 987 A.2d 781, 784 (Pa Super. 2009)); *see also Meiser v. State Farm Fire and Cas.*

*Co.*, No. 3:17-2366, 2018 WL 4680055, at *3 (M.D. Pa. Sept. 28, 2018) (finding a complaint

sufficient to state a claim for bad faith where the plaintiff alleged "extreme disparity" between

the insurer's estimate of damages and plaintiff's estimate, and further supported the

allegation with exhibits attached to the complaint showing the extent and total amount of

damages based on plaintiff's estimates).

11

Here, Plaintiff alleges that USAA only offered her $2,500 on a $45,000 UIM policy when she presented USAA with documents, a police report, photographs, and numerous medical records, including documentation alleging over $2,000,000 in future medical expenses. (Doc. 1, ¶¶ 9-12). Drawing all reasonable inferences in favor of Plaintiff, the facts alleged in the Complaint, taken together, support a claim that Defendant failed to perform an adequate investigation into the facts of Plaintiff's claim, leading to an unfounded refusal to pay the policy limits Plaintiff's claim she entitled to. Although discovery in this case may later reveal that Defendant did in fact have a reasonable basis to deny Plaintiff's claim, the Complaint states the minimum amount of facts necessary to allow Plaintiff's bad faith claim to survive the motion to dismiss. Affording Plaintiff every reasonable inference, these facts, when accepted as true, are sufficient to state a bad faith claim premised on Defendant's failure to adequately investigate Plaintiff's claims, including the alleged significant disparities between Plaintiff's claimed injuries, the policy limit, and Defendant's $2,500 offer. Though none of these factual allegations alone may be sufficient to state a claim under § 8371, taken together, Plaintiff has successfully stated a plausible claim of bad faith. Further factual development is required, and Plaintiff are entitled to discovery at this early stage of the litigation.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant USAA's partial motion to dismiss will be

denied.  A separate order follows.

Robert D. Mariani
United States District Judge